UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRANCE WILLIAMS, #488132,

    Petitioner,

                                                 Civil No: 06-CV-10947
                                                 Honorable Denise Page Hood
                                                 Magistrate Mona K. Majzoub

v.

TIMOTHY BALL,

    Respondent.
_____/

**OPINION & ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS**

      Petitioner, Terrance Williams, is on probation and is reporting to the Greenfield District Probation Office. He was convicted at the conclusion of a Wayne County Circuit Court jury trial of malicious destruction of personal property over $1,000.00, but less than $20,000.00, MICH. COMP. LAWS §750.377a(1)(b)(I), and possession of a firearm during the commission of a felony, MICH. COMP. LAWS §750.227b. Petitioner was sentenced to a two year term of imprisonment for the felony-firearm conviction, followed by a probationary period of six months for the malicious destruction of property offense. Petitioner has filed a petition for a writ of habeas corpus through counsel under 28 U.S.C. §2254. For the reasons stated below, the Court denies the petition.

**I. BACKGROUND**

      Petitioner's convictions arose from allegations that he fired several shots at Gregory Davis' vehicle. The state appellate court in this case set forth the underlying facts, which are presumed correct on habeas review, *see Monroe v. Smith,* 197 F. Supp.2d 753, 758 (E.D. Mich. 2001), *aff'd*. 41 Fed. Appx. 730 (6th Cir. 2002), as follows:

The complainant testified that he met defendant while dating defendant's cousin, Paris, and, at the time of the incident, had known defendant for about a year. According to the complainant, defendant had three motorcycles and two cars. The complainant indicated that he remarked to Paris that they were probably stolen. Subsequently, Paris invited the complainant to her family's home for a July 4th gathering. After defendant arrived, he told the complainant that he needed to "hollar [sic] at [him] about something," and later confronted the complainant about telling Paris that his belongings were stolen. The complainant indicated that a brief altercation ensued and, when defendant's grandfather came to the door, he said that he did not want to disrespect defendant's grandparents' house and that "[they] can just take this away from here." Defendant did not respond and subsequently left in a car. The complainant also left the gathering and went to a friend's house for about two hours.

As the complainant was en route to his house, which he shared with Paris, he received a phone call from Paris, and he told her that he was headed home. After the complainant pulled in his driveway and got out of the car, he saw three men on motorcycles. The complainant identified defendant as one of the three men. He could not recognize the other two men because they were wearing helmets. According to the complainant, defendant approached him and said, "What's up Greg." The complainant responded, "Oh, you gonna come to my house now." The complainant walked past defendant toward his door, and defendant allegedly stated, "I wouldn't do that if I were you." The complainant indicated that defendant then used a handgun to fire about six or seven shots into his car. Thereafter, defendant got on a motorcycle and the three men left. The complainant indicated, that as a result of defendant's actions, his car repairs totaled approximately $1,082.

The complainant's neighbor testified that, at approximately 3:00 AM, he looked out his window and saw three motorcycles, two men wearing helmets, and a third man arguing with the complainant. The neighbor then saw the man arguing with the complainant fire a gun at the complainant's car, after which the three men left on the motorcycles. Although he saw the incident, he could not identify the perpetrator.

The responding Detroit police officer observed the damage to the complainant's vehicle, and found one forty-caliber Smith and Wesson shell casing. The officer indicated that the complainant described the gun as a blue steel automatic. In a statement made to the police, defendant admitted that he and the complainant had a "talk" at the family gathering and that, although the complainant wanted to fight him, they both left. Defendant claimed that he did not see the complainant again. Defendant admitted that he owned a forty-caliber "Glock" blue steel automatic handgun, but denied going to the complainant's house and firing a gun at his car.

*People v. Williams,* No: 254907, 2005 WL 1398342 (Mich. Ct. App. June 14, 2005).

2

> Petitioner filed an appeal of right and raised the following issue:
>
> I. Whether Defendant's trial counsel was constitutionally ineffective where he (1) failed to contact prior to trial or call at trial a known potential alibi witness, whose testimony at the *Ginther* hearing established that she could, in fact, provide a complete alibi defense; (2) failed to call as a witness at trial a second alibi witness, despite the difficulty in defending the case without the alibi testimony, for the sole reason that he had not met with the witness fact-to-face prior to trial; (3) failed to present evidence that the only motorcycle owned by Defendant had been towed and was inoperable at the time that Defendant allegedly committed the crime riding his motorcycle; (4) failed to present evidence that Defendant was on his cell phone at the approximate time of the incident.

Petitioner then filed a motion for a new trial and a motion for a *Ginther*[1] hearing. The *Ginther* hearing was held. However, the trial court denied Petitioner's motion for a new trial. The Michigan Court of Appeals subsequently affirmed Petitioner's convictions. *Williams,* 2005 WL 1398342.

Petitioner then filed an application for leave to appeal with the Michigan Supreme Court raising the identical claim as that which was presented before the Michigan Court of Appeals. Petitioner's application for leave to appeal was denied. *People v. Williams,* 474 Mich. 908; 705 NW2d 134 (2005) (table).

Petitioner has now filed a petition for writ of habeas corpus challenging his conviction based upon the same issue raised in the state appellate courts. Respondent has filed an answer to the petition.

## II. STANDARD

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this court's habeas corpus review of state court decisions. Petitioner is entitled to the writ of habeas corpus if he can show that the state court's adjudication of his claim on the merits:

---

[1]*People v. Ginther,* 390 Mich. 436; 197 N.W.2d 281 (1973)

3

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law is objectively unreasonable." *Id.* at 409. "Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence." *Baze v. Parker,* 371 F.2d 310, 318 (6th Cir. 2004) (citing 28 U.S.C. §2254(e)(1)).

### III.  DISCUSSION

#### A.

#### Ineffective Assistance of Counsel

To show that Petitioner was denied the effective assistance of counsel under federal

constitutional standards, a defendant must satisfy a two-prong test. In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court sets forth the two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland,* 466 U.S. at 687. Second, the petitioner must establish that the deficient performance prejudiced the

defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland,* a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Relative to a "reasonable probability," the question is whether the evidence which was not revealed, "taken as a whole, might well have influenced the jury's appraisal of [Petitioner's] culpability" and whether "the likelihood of a different result if the evidence had gone in is sufficient to undermine confidence in the outcome actually reached . . . ." *Rompilla v. Beard*, 545 U.S. 374, 376 (2005). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the

adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686. Although Petitioner was "not entitled to an attorney who will not leave the smallest stone unturned," the stones that he did have, "should at least [have been] nudged." *Bigelow v. Williams,* 367 F.3d 562, 573 (6th Cir. 2004).

*Strickland* requires counsel "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691. "[T]he duty to investigate does not force defense lawyers to scour the globe on the off-chance something will turn up . . . ." *Rompilla,* 545 U.S. at 383. The "American Bar Association standards, which provide guidance as to what constitutes 'reasonable' professional conduct also mandate counsel's duty to investigate all leads relevant to the merits of the case." *Blackburn v. Foltz,* 828 F.2d 1177, 1183 (6th Cir. 1987) (citing ABA Standards for Criminal Justice 4-4.1, 4-54-4.55 (1980)) (internal citations omitted). "Attorneys do however, have a duty to make all reasonable efforts to learn what they can about a case." *Rompilla,* 545 U.S. at 385. "This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith,* 395 F.3d 251, 258 (6th Cir. 2005). "A purportedly strategic decision is not objectively reasonable 'when the attorney has failed to investigate his [or her] options and make a reasonable choice between them.'" *Id.* quoting *Horton v. Zant,* 941 F.2d 1449, 1462 (11 Cir. 1991). Stated differently, "[i]t is not reasonable to refuse to investigate when their investigator does not know the relevant facts the investigation will uncover." *Dickerson v. Bagley,* 453 F.3d 690, 696 (6th Cir. 2006). Inattention or negligence, as opposed to reasoned strategic judgment, is inexcusable. *Wiggins v. Smith*, 539 U.S. 510, 526 (2003); *Sims v. Livesay,* 970 F.2d 1575, 1580-81 (6th Cir. 1992).

To demonstrate deficient performance or prejudice resulting from a failure to investigate, a petitioner must "make some showing of what evidence counsel should have pursued and how such evidence would have been material." *Hutchinson v. Bell,* 303 F.3d 720, 748 (6th Cir. 2002). "[T]here is no need to show that the evidence that might have been discovered would have been helpful - only that a proper judgment could not be made without the investigation when failure to investigate is thought to be sufficiently serious." *Poindexter v. Mitchell,* 454 F.3d 564, 588 (6th Cir. 2006) (Boggs, C.J., concurring).

**1.**

**Trial Counsel's Failure to Call Alibi Witnesses**

Petitioner asserts that his trial attorney failed to present an alibi defense by not calling Monica Ross and Danielle Dixon as witnesses to testify that Petitioner could not have been the perpetrator because he was with them at the time the criminal offense was being committed. Therefore, Petitioner argues that his attorney was deficient in his legal representation. The Michigan Court of Appeals disagreed:

> Defense counsel testified that, because he was never able to confirm the proposed alibi defense, his trial strategy was to explore the "bias between the two gentlemen" and attack the complainant's credibility. Counsel's strategy assessment was supported by the fact that Ross was uncooperative, unresponsive, and chose not to attend trial. This Court will not second guess counsel in matters of trial strategy.
>
> \* \* \*
>
> Defendant has failed to overcome the presumption that defense counsel's decision not to subpoena Dixon, but to focus on Ross, was sound trial strategy. Defendant acknowledged that he did not give defense counsel Dixon's name but only described her as Ross' cousin. Further, because Ross was the person who named Dixon as a witness, and Ross' potential testimony was a "concern," defense counsel's decision to first investigate Ross before investigating a witness provided by Ross was not unreasonable.
>
> \* \* \*

7

> Moreover, Dixon indicated that, although she was aware of defendant's arrest and the date of the alleged incident for which he was arrested, she did not come forward to the police or anyone else about defendant being at her house. Dixon also indicated that she saw defendant between his arrest for the incident and the trial date, and defendant never said anything to her about coming to court and testifying on his behalf. Indeed, it is compelling that Dixon did not come forward before or during defendant's trial, and defendant never requested her to do so.

*Williams,* 2005 WL 1398342, *4-5 (internal citations omitted).

The right of an accused to present a defense has long been recognized as "a fundamental element of due process." *Washington v. State,* 388 U.S. 14, 19 (1967). The United States Constitution guarantees to criminal defendants "a meaningful opportunity to present a complete defense." *Varner v. Stovall,* 500 F.3d 491, 499 (6th Cir. 2007). This right is not without limits, however, and may be reasonably restricted "to accommodate other legitimate interests in the criminal trial process." *United States v. Scheffer,* 523 U.S. 303, 308 (1998). However, the exclusion of evidence is unconstitutional where it "infringe[s] upon a weighty interest of the accused." *Id.* "[T]he exclusion of evidence in a criminal trial abridges an accused's right to present a defense only where the exclusion is arbitrary or disproportionate to the purpose it is designed to serve." *Ferensic v. Birkett,* 501 F.3d 469, 475 (6th Cir. 2007).

Based upon the facts presented above, the Court does not find that the state court decision was contrary to, or an unreasonable application of clearly established federal law. Even if this court were to conclude that trial counsel's basis for exclusion of Ross' and, in particular Dixon's testimony, was not an objectively reasonable strategic decision as counsel failed to investigate and uncover Ross' and Dixon's potential testimony as a witness for Petitioner, Petitioner nonetheless would not be able to demonstrate prejudice by counsel's deficient performance.

Despite Dixon's testimony at the *Ginther* hearing that she would have been able to provide

8

Petitioner with an alibi, based upon Gregory Davis' eyewitness testimony against Petitioner (Tr. 2/12, at 113-116)[2], and the circumstantial evidence presented by Officer Keith Young and Investigator John Reuse (Tr. 2/12 at 144-46, 158-59)[3] the degree to which Ross and Dixon's proposed testimony would have been favorable to Petitioner's case appears minimal. For these reasons this claim presents no issue upon which habeas corpus relief may be granted.

## 2.

### Trial Counsel's Failure to Investigate and Present Evidence

#### a. Motorcycle Evidence

Petitioner maintains that his trial attorney provided ineffective assistance of counsel when he failed to conduct a proper investigation and present evidence that he could not have arrived at and left the scene of the incident on his motorcycle because his motorcycle had been towed and was inoperable at the time. The Michigan Court of Appeals rejected Petitioner's argument finding as follows:

> Defense counsel testified that he did not recall defendant telling him that his motorcycle was inoperable, but he recalled defendant telling him that he had three motorcycles.
>
> Even if we were to accept defendant's testimony that he told defense counsel that his motorcycle was inoperable, defendant cannot demonstrate that defense counsel's failure to present the proposed evidence deprived him of a substantial defense. It is highly improbable that the proposed evidence would have affected the outcome at trial. At trial, the complainant testified that defendant had three motorcycles. Further, even if defendant owned only one motorcycle, that was inoperable, that did not preclude the possibility that defendant could have been on someone else's

---

[2] Gregory Davis testified that he saw Petitioner fire six or seven shots at his vehicle.

[3] Their testimony confirmed Petitioner's ownership of the same type of weapon that was used to shoot at Petitioner's vehicle and the same weapon Gregory Davis observed on Petitioner's person at the time of the incident.

>motorcycle at the time of the incident. It was not disputed that defendant regularly rode motorcycles and had a chauffeur's license with a cycle endorsement. Accordingly, defendant cannot demonstrate that there is a reasonable probability that, but for the counsel's failure to prevent the proposed evidence, the result of the proceeding would have been different.

*Williams,* 2005 WL 1398342, *5 (internal citations omitted).

Having reviewed the record the Court concludes that the Michigan Court of Appeals' decision is neither contrary to, nor an unreasonable application of, established Supreme court precedent. Even if counsel's performance in failing to investigate and present the motorcycle evidence, fell "outside the wide range of professionally competent assistance[,]" Petitioner cannot establish the requisite prejudice *Strickland* requires. 466 U.S. at 690-94. The motorcycle evidence, if presented to the jury, would not have influenced the jury's appraisal of Petitioner's culpability. He cannot demonstrate that, but for counsel's errors, assuming they are such, the outcome of the trial would be different.

### b. Cell Phone Record Evidence

Petitioner asserts that his trial attorney provided ineffective assistance of counsel when he failed to conduct a proper investigation and present evidence that he received incoming and made out going phone calls on his cell phone at the time he is alleged to have been riding his motorcycle in connection with the incident. The Michigan Court of Appeals disagreed and started as follows:

>Defense counsel testified that he did not recall defendant telling him that he had cell phone records to demonstrate that he was on the phone at the time of the alleged incident.
>
>Even if defense counsel was aware of the cell phone records, defendant cannot demonstrate that he was deprived of a substantial defense by counsel's failure to produce them as part of an alibi defense. As noted by the trial court, "[o]bviously it is impossible to use 'cell' (or mobile) phone records to prove one's whereabouts

> for an alibi defense. "More significantly, the cell phone records could have easily refuted the claimed alibi defense. As previously indicated, defendant indicated that he was with Ross. But the cell phone records showed that, between 12:30 A.M and 3:45 A.M., defendant made five calls to Ross' home. Ross acknowledged that defendant did not "make a habit" of calling her house when they were together. Ross testified that defendant may have been calling to talk to one of her brothers. When asked about the calls, defendant claimed that he called Ross' house to check on Ross' [sic] year old daughter, whom Ross' mother was babysitting. The court noted that defendant's explanation was "farfetched."
>
> In brief, whatever exculpatory value the cell phone records had to suggest that defendant did not commit the crime, they had at least as much inculpatory value for disproving the proposed alibi defense. Consequently, defendant has failed to demonstrate that there is a reasonable probability that, but for counsel's alleged inaction, the result of the proceeding would have been different.

*Williams,* 2005 WL 1398342, *5 (internal citations omitted). For the same reasons relative to the alleged inoperable motorcycle evidence, habeas relief is also not warranted for the omission of Petitioner's cell phone record evidence. Even if counsel's performance was deficient, Petitioner has not demonstrated that, but for counsel's failure to investigate and produce this cell phone evidence, the outcome of the proceeding would have been different.

### IV.  CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED.**

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated:  March 31, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2009, by electronic and/or ordinary mail.

S/William F. Lewis
Case Manager

11